May it please the Court, Jeffrey Grizzle for the Plaintiff Appellant, Pacific Shipyards International. Your Honors, I certainly know that this is a civil RICO case that was dismissed on motion to dismiss under Rule 12. We submit that the heart of this case involves a series of intertwined issues, legal issues, which are the standing issue, the proximate cause issue, and then the nature of cognizable damages under a civil RICO case. I've simply put, I think that... The simple problem you have here is that the alleged fraud here, maybe it's a real fraud, but whatever the fraud you allege, was not committed against your client. It was committed against the government. The government doesn't seem to care. Well, I'm not sure that the government care. It doesn't care. In fact, there's a pending false claim there. Well, whatever the purpose of this case, whether they care or not, they don't care enough to give it back to us, to take back the... They took it back, didn't they? No, they haven't. Not yet? The decision on the related case just recently came down. And the decision of the Alaska Court saying that the dry dock has to go back to the government was upheld. So that's moving forward on that front. So it's my client's hope that within the foreseeable future that this scam that has been now going on for almost five years... They're really a much more direct victim to vindicate this, correct? The government is a victim in a sense. They have suffered the loss of the dry dock, the loss of the use of the dry dock. However, my client has suffered because it is subjected to basically unfair competition. Because here are two corporate entities that are utilizing a fraudulently obtained government dry dock that they got for free to compete with my client who had to go out and buy that piece of equipment. And that gives them an unfair competitive advantage, which makes it more difficult for my client to win bids and to get jobs. But you don't have an exclusive right to do the work here in Hawaii, right? No, we do not. However, there are only two shipyards of this caliber that can do the type of work that is at issue. The question that Judge Kaczynski raises is one that was addressed head on by the Second Circuit in the recent decision in, it's called Ideal Steel v. Anza. That's at 373 Fed 3rd 251. And I'll quote from the opinion in that case at 263, where a complaint contains allegations of facts to show that the defendant engaged in a pattern of fraudulent conduct that is within the RICO definition of racketeering activity and that was intended to and did give the defendant a competitive advantage over the plaintiff. The complaint adequately pleads proximate cause and the plaintiff has standing to pursue a civil RICO claim. This is so, and I'm still quoting from the opinion, this is so even where the scheme dependent on fraudulent communications directed to and relied on by a third party rather than the plaintiff. The Second Circuit has reached that conclusion on a couple of cases. And I highly commend this case to your honor's reading because it has an excellent discussion not only of But it also discusses the Supreme Court decision in Sedema talking about competitive injuries and the fact that such injuries are compensable under RICO. Counsel, did you pin a state law cause of action for intentional interference with prospective economic advantage? I believe we did not, your honor. Why not? If you prove the fraud there, you can get punitive damages. Why isn't that a sufficient remedy for it? I believe that at the, well, I believe that at the time, we considered a number of potential causes of action. One of which would have been an antitrust claim. One of which would have been a How about a plain old tort claim? A 4A-2 claim. A potential interference with prospective economic advantages. I don't believe that the Hawaii courts have recognized an interference claim of that nature where there's conduct that involves criminal activity involving some other party. So I don't know that that is The question is whether the competitive behavior can be viewed as an interference with prospective economic advantage. That's all they did here. They didn't, all they did is compete. So you say they competed unfairly. Now, the California courts are a bit more suggestive in embracing that thought, perhaps in Hawaii. I don't think there's any precedent that would indicate that that's viable in the state of Hawaii. But there is, in addition to the ideal steel case, Well, assuming we follow the second circuit on this, I have some difficulty wrapping my mind around it because I have a hard time figuring out where you get the down, who stops being a victim of a, you know, fraud is committed against one party. So, well, you know, I'm a victim because I am the competitor and somehow I suffered a fraud. And then, of course, the customers of the competitor can claim that they have had a detriment and the people who would have used the ships that would have gone to the competitor. But the ripples from these things are never ending. Well, I understand that. I think there's something satisfyingly simple and manageable about saying, look, you're not a victim of the fraud. No harm, no foul. If somebody wants to show a fraud, you can't show you're the victim. I understand what Your Honor's concern is. However, I think that, again, you have to go back and look at the legislative history for the RICO statute, which we make reference to that in our brief. And it's referenced in the Supreme Court decision on the Sedema case. And then you look at not only the second circuit decision. Well, in the footnote, well, in the dissent, Justice Marshall argued competitive injuries were the only type of injuries that should be compensable under the RICO statute. In other words, injuries by competitors. And he derived that argument from the legislative history for the statute because the civil remedy provision for the RICO looked at this and said, OK, what's the nature of the remedy? It said competitive injuries. And so in response to your question, and the second circuit says this absolutely in their decision, and the fourth circuit says it also in the Mid-Atlantic telecom case, which we cited, which is 18 Fed 3rd 261. Competitors are a specifically intended class to be protected under the civil RICO statute. And so when you have a competitive injury, and that is what the Supreme Court said in footnote in, I think it was footnote 5 in the Sedema case. They said competitive injuries are compensable. Justice Marshall said it's the only kind. The Supreme Court said, no, they're not the only kind of injuries that are compensable, but competitive injuries are compensable. Why was Judge Ezra wrong in saying that you had not sufficiently alleged injury? The second amendment complaint, you were unable to say we would have bid this job for dollars X. We would have cleared dollars Y. In came RISCO and bid at a lower price and we lost dollars Y. Well, and I think I think we did essentially allege that in our second amendment complaint specificity required under Federal Rule 9. Federal Rule 9 with respect to fraud. He gave you a chance to put numbers to the pleading and you didn't do that. Why not? Well, we didn't put numbers simply. And let me just kind of back up because it's our position. And I believe the case law supports this, that with regard to the particularity requirements, that pertains to the fraud. And we set forth the specific documents that where the false statements were made, the nature of the false statement and why it was false. That part was pled with particularity. I think what the appellees are arguing and basically what Judge Ezra put on us in terms of the burden was that we not only have to plead the fraud with particularity, but we have to plead every single item of damages. And at the time when our amended complaint was filed, this was back in 2002, this dry dock had only been put into operation within a few months when the first complaint, first amendment complaint was filed and maybe six months from the time the second amendment complaint was filed. We didn't have that much track record at that point in terms of we knew it was going to hurt our client. Well, it seems to me your argument was that now that there's two of us, any business we don't get is business we lost. Because if they weren't there, that would be our business. I think we went beyond that. And what we said was that unless they had gotten this bigger dry dock, because they already have one dry dock. You know, the allegation, which is a completely improper allegation, that my client was trying to monopolize business, that's not true at all. And there's nothing in the record to support that. You know, this was a motion to dismiss against my client. And the facts are supposed to be presumed in my client's favor that they have another dry dock, but the other dry dock is a little smaller. And there were certain jobs that were awarded to them that if they hadn't gotten this bigger dry dock pursuant to this fraudulent scam, they wouldn't even have been able to bid on. With respect to the Jarvis, you pleaded that you missed the Jarvis because of this fraud. But you didn't plead how much you would have bid the Jarvis for, how much they bid for and what losses you had on the Jarvis. Isn't that true? I believe it's not. It's correct that we did not say we lost X number of dollars. Why not? Why not with the particularity required under FRCP 9 as to every element of fraud, including damages? I think we pled the nature of the damage with particularity. I don't I it's I'm sorry, Your Honor, I guess I can't agree that it was necessary for us to plead the dollar amount with that. It's notice pleading. Otherwise, it would seem to me as to the damages, the damages, but not as to the elements of deceit. Correct. And the reason and the case law says the case law says that you have to tell the other side what it is they did wrong. The deadline is on time. We'll hear from opposing counsel. Good morning, Your Honors. May it please the court. Robert Smith for the appellee. Tanagoosics Corporation. Your honors are absolutely correct. This morning, the district court was right. The PSI has failed to plead with particularity. The facts necessary to demonstrate standing in the RICO, which would be a property interest that has been hard, that has been directly harmed by the alleged fraudulent statements of Tanagoosics Corporation. Well, they pleaded that they've lost money, gross revenue. Isn't that business as property? Not under this circuit's holding in the 1991 case of Lancaster, Your Honor. PSI's claim at base is that lost market share or its lost market share of the Hawaii large vessel ship repair market is actionable under RICO. And the market share theory was addressed in the 1991 Lancaster decision. And in Lancaster, court rejected the idea that lost market share, lost bids, or lost customers was a cognizable property interest or any business interest that could be actionable under RICO. What's the difference between the franchise case? The franchise case, we held that that was business as property, correct? That's correct. That's a monopoly case. This is an oligopoly case. What's the difference? Well, this is not a monopoly case, Your Honor. No, it's not a monopoly case. It's an oligopoly case. I'm sorry. I misheard you. I misheard you. Well, there are a couple of different factual scenarios here. First, when we look at, you mentioned that PSI was losing money here. Losing revenue. I don't know if they're losing money. They might have lost money on the contract even if they'd gotten it. Well, PSI alleged two main harms. First, they alleged that they had lost a $4.5 million investment in a dry dock. But they did not allege that their acquisition of this dry dock was any way related to Tanegushi Corporation or to. Because they basically said we had to pay for ours and they didn't have to pay for theirs. I believe that's their allegation, Your Honor. Correct. Then the second part of PSI's harm is that they've alleged that they've lost customers and lost bids. But as Your Honor pointed out, PSI never claimed or never placed a bid for the Jarvis. The bid for the U.S. Coast Guard cutter Assateague went not to the ex-competent, but to Morisco's dry dock, the Little Paris. And there are other factors that can also contribute to these lost bids. It could be PSI's bid price. It could be past performance. The people who need their large vessels repaired could decide to go to the mainland. There are other options here. Okay, but this is judgment on the pleading, so they don't have to get too far. But they have to show a direct injury, Your Honor, from the alleged fraudulent statements made by Tanegushi Corporation and their harm to a business or property interest. And at ER 53, there the Hawaii District Court painstakingly went through the chain of causation in this case. And the District Court found that they were intervening acts by the United States government, intervening acts by potential customers, and intervening acts by PSI itself that destroyed that chain of causation and meant that PSI did not have standing to maintain this action. But all those intervening acts were clearly foreseeable by the creator of the risk who did the alleged fraud. I mean, without the government intervening, the fraud couldn't exist. Right. So it was obviously necessary and foreseeable and not a superseding or intervening act. Properly stated, it was not foreseeable for Tanegushi Corporation and Alaskan Native Village Corporation that they would be entering into direct competition with Pacific Shipyards. That was not their intent. The alleged intent is not. I mean, all we're talking about is the complaint here. And the alleged intent was that Morisco did this fiddle with a supposed minority business enterprises, otherwise benefited ethnic group to get a dry dock, which is supposed to end up in Alaska, but to stay here for zero dollars and allow them to compete with a lower cost basis. I mean, unless the government were defrauded, the whole scheme wouldn't work. And that was alleged. So what's missing here? Well, what's. Well, there are. First, I want to address one one statement that you made, Judge, and that is that those issues about whether or not the dry dock was supposed to be in Alaska or not, are the subject of a related case. And that's the panel decision in Huber a couple of weeks ago. But it's alleged in the complaint. It is alleged. That's what we're dealing with here. And certainly when you're dealing with a dismissal on the pleadings, you're you're you're trapped to looking at the pleadings in this case. But it's not always the case where the pleadings are merely legal conclusions that are restated as fact. And when there are documents that are attached to the pleadings in this case, which do not support those allegations of fraud. For example, you look at some of the agreements between TDX and Morisco that PSI claims are fraudulent. And as the district court properly pointed out, there is no fraud on the face of those documents. Some of those documents indeed involve legal interpretations. I'm sorry, PSI is making legal interpretations of those documents. There just isn't any fraud pled with the necessary particularity in this place. There's no time. There's no specific reference to who was involved, what sort of activities would be happening. There just isn't enough. And this is especially true when you consider some of the elements of RICO in this case, Your Honor. Well, one of the things that PSI is trying to do is they're, in my mind, creating some dangerous precedent in that where there's only two competitors in the marketplace, that there must be some automatic injury or proximate causation to support a RICO claim. But it's not automatic. I mean, they are alleging that there is. There are long ways, even if the complaint gets reinstated, there are long ways from getting relief. They still have to prove it. I don't see where they're claiming automatic injury. But they haven't alleged the harm, the direct harm to their business or property interest, which is necessary for standing under RICO. That's obviously one of the two grounds that this case was dismissed by the district court. Why haven't they alleged when they say, look, there are two competitors in the market. And what we set out to prove is that by having our other competitor engage in this conduct, they've taken away business from us. Not all business, not every contract. Maybe some would have gone to the mainland. Maybe some of you would have gotten anyway. But we're out to prove that they got more, our competitor got more of these contracts than they would have. We lost money that way. I don't see why that's a dangerous precedent or why that's impossible to prove. Well, the dangerous precedent there is, Your Honor, that it would require this court to overturn prior panel decisions that say that such claims of lost bids and lost market share are now actionable under RICO. Another case that this panel could look to would be the 1992 decision in Imagineering versus Keywood Pacific Company. In that case, the plaintiff was claiming RICO damages based on unrealized profits from subcontracts that they claimed they would have received but for the alleged RICO violation. In that case, this court held that certain unrealized profits from subcontracts that they may or may not have received was simply not actionable under the mail fraud statute. That just is not enough to show a definite concrete business or property interest that is designed to be protected by this statute. With that, Your Honor, I would like to reserve the last two minutes of my time for co-counsel from Morisco. Okay. Thank you, Your Honor. Good morning. Michael Freed for Morisco Limited. Judge Ezra got it right. He got it right on all four points. What hasn't been discussed yet is he got it right on finding that there was no, under the pleadings, freely allowed to be amended. There was no showing of an enterprise and no showing of a RICO requirement of a pattern of activity. He analyzed this as a closed end. Let me counsel a page. Wasn't an allegation that TDS Morisco have a structure besides the fraud on the government to operate the dry dock for five years? And that's and therefore there was an enterprise. I mean, there's an allegation. It's not necessary that Mr. Corleone and Mr. Barzini have an olive oil business on the side in order for them to be in a criminal racketeering. The reason Judge Ezra got it right is because the alleged fraud is that not telling the government, not telling the government that the ship, the dry dock was going to be used in Hawaii instead of Alaska. That's the alleged fraud. It's a closed end fraud, right? Right. And Judge Ezra found that it was such fraud. It ended when the ship was transferred to TDX here in Hawaii. So it was over. Well, didn't they try to get another dry dock to no allegations? No. Mr. Griswold talks about another ship called the plate. Flattery when he on the second minute complaint, when he was trying to expand the time period to get around this brief time. The fraud doesn't end when the ship stays in Hawaii because there's no damage at that point. The fraud ends or doesn't end when the damage is caused year after year. So then how does the court deal with the fact that the Huber decision, the Ninth Circuit ruled? Not that there was fraud. The Ninth Circuit ruled that there was a condition in the deed of transfer that required TDX to move the dry dock to Alaska within a year. They didn't move it to within a year. So therefore, the Ninth Circuit decided a three judge panel decided that the ship, that the title to the ship automatically reverted to the United States of America when TDX did not move it to Alaska at the end of one year. It's still causing damages allegedly to the plaintiff in this case. That's the answer. Well, Judge, you, this panel would have to overturn Lancaster in order to buy into that argument. Not only would this panel have to overturn Lancaster and all of the other Ninth Circuit precedent that follows Lancaster, I submit to you this is not a good case to take that giant leap. Thank you. A lot of time. If you want a minute for a buck, we'll just take it. We submit that they're mischaracterizing the Lancaster decision. The issue there was, was there fraud? The predicate acts were alleged to be fraud. There was no fraud. Your big problem is pattern. There's a pattern. They lied once. The pattern is no. It's not that they lied once. They lied to get the dry dock in the first place, saying that they were going to operate it. After they got it, and this is all alleged in our complaint, after they got it, they lied, and we submit are continuing to lie at the present time in order to try and get a waiver so that they can use it in Hawaii. But the third thing, it's an unrelated thing, and it's not addressed in the recent Ninth Circuit decision in Huber, is they lied to conceal the nature of the relationship between them. That essentially, TDX, pursuant to that October 2000 agreement, agreed to lease this thing, this dry dock, to Morisco, which they knew darn well was not permitted under the donation program. And after they got it, they continued to lie to try and cover that up. They lied to my client when we called and asked them what was going on. They lied to the government. They lied to Congress trying to get bills passed to alleviate this whole thing. This is a continuing pattern. The closed end misrepresentations specifically referenced in the complaint go for over a year. What the statute prohibits is fraud. I mean, you can lie all day long, but it's not a it's not a legal violation. You've got to have a pattern of fraudulent activity. No, but but fraud means. Well, let's stick with one fraud. Well, and that's one of the very important distinctions between the Lancaster case and this case. Lancaster was decided under prior law when it was it was the law that intangible rights were not cognizable as mail or wire fraud. The statute has since been amended. Intangible rights are cognizable. The government had a right to compliance with its contract with TVX when they donated the dry dock to the extent that they were lying to avoid the consequences of that, to deprive the government of contract rights that it had to get the dry dock back after the fact. That's an ongoing pattern of fraud. That's cognizable under the statute. That goes to the right kind of injury. I don't see the pattern. They lied once and they got the dry dock. They committed one fraud, according to your complaint. All of the stuff you talked to me about has to do with whether or not this is a rigged injury. Where is the pattern of fraud? Again, Your Honor, the complaint alleges specific false statements, and it alleges the reasons for those false statements. False statements are not critical facts. I mean, you can lie all you want. There's no prohibition against lying. You can get on the phone and lie. You can lie to your girlfriend. You can lie to your business partner. There are all sorts of things that you can tell lies about. You have to commit a fraud. Where's the fraud? I mean, they committed one fraud, according to your complaint. What other fraud did they commit to make up a pattern? Well, again, Your Honor, I think it is specified in our complaint that the fraud is not just the getting of the dry dock. The fraud is the getting of the dry dock and the getting of the waiver and the avoidance of the consequences of their breach of contract. Those are all different false statements. But beyond that, the mail and wire fraud statutes do not require that the actual wire and mail communications be fraudulent in and of themselves. They only need to be in furtherance of the fraudulent scheme. And there are ongoing false statements after the fact that are clearly in furtherance of the fraudulent scheme. We have documents that are in the record already just with the pleadings of wire transfers, faxes, et cetera, that were ongoing for a long period of time. So. OK, thank you. Thank you. Thank you. Well, here are the last case on the calendar. You know, this is this tag attack. Thank you.
judges: Kozinski, Callahan Bea